Case No.: 16-16814-F

UNITED STATE COURT OF APPEALS
ELEVENTH CIRCUIT

_____

11TH CIRCUIT CASE NO.: 16-16814-F


FLOR ANDREA RODRIGUEZ ASALDE, *et al*.,

Plaintiffs/Appellants,

v.

FIRST CLASS PARKING SYSTEMS LLC, *et al*.

Defendants/Appellees.

_____


On Appeal from the United States District Court

Southern District Of Florida

Case No.: 16-20027-CV- COOKE

_____


RESPONSE BRIEF OF APPELLEES

FIRST CLASS PARKING SYSTEMS LLC, *et al*.


Lowell J. Kuvin, Esq.
Law Office of Lowell J. Kuvin
17 East Flagler St. Suite 223
Miami, Florida 33131
Tel:   305.358.6800
*Attorney for Appellees*

March 1, 2017

## UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

FLOR ANDREA RODRIGUEZ ASALDE,
JOHN CONDE, and JAVIER ANTONIO
CABRERA SAVINOVICH,

      Appellants,

      vs.

FIRST CLASS PARKING SYSTEMS LLC,
SEBASTIAN LOPEZ, and JORGE ZULUAGA,

      Appellees.

_____/

## RESPONSE BRIEF OF APPELLEES

Lowell J. Kuvin, Esq.
Law Office of Lowell J. Kuvin
17 East Flagler St. Suite 223
Miami, Florida 33131
Tel:   305.358.6800
*Attorney for Appellees*

# DEFENDANTS/APPELLEES'
# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

1. HONORABLE MARCIA G. COOKE,  (District  Court Judge)

2. FIRST CLASS PARKING SYSTEMS LLC (Defendant/Appellee)

3. SEBASTIAN LOPEZ, (Defendant/Appellee)

4. JORGE ZULUAGA, (Defendant/Appellee)

5. FLOR ANDREA RODRIGUEZ ASALDE (Plaintiff/Appellant)

6. JOHN CONDE, (Plaintiff/Appellant)

7. JAVIER ANTONIO CABRERA SAVINOVICH, (Plaintiff/Appellant)

8. J.H. ZIDELL, PA (Plaintiffs'/Appellants' Counsel)

9. SHESKIN, JOSHUA H., ESQ., (Plaintiffs'/Appellants' Counsel)

10. JAMIE H. ZIDELL, ESQ., (Plaintiffs'/Appellants' Counsel)

11. RIVKAH FAY JAFF, ESQ. (Plaintiffs'/Appellants' Counsel)

12. KELLY, K. DAVID, ESQ., (Plaintiffs'/Appellants' Counsel)

13. LAW OFFICE OF LOWELL J. KUVIN, LLC, (Defendants'/Appellees' Counsel)

14. LOWELL J. KUVIN, ESQ., (Defendants'/Appellees' Counsel)

15. SUNDEEP K. MULLICK, ESQ., (Defendants'/Appellees' Counsel)


There is no parent corporation or any publicly held corporation that owns 10% or more of the stock of any of the corporate Defendant/Appellee.

16-16814-F

*Asalde, et al. v. First Class Parking Systems LLC, et al.*

# TABLE OF CONTENTS

Table of Authorities                                    Page i - ii

Statement Regarding Oral Argument                      Page iii

Jurisdictional Statement                               Page iv

Statement of the Issues                                Page v

Statement of the Case                                  Page vi-vii

Statement of Standard of Review                        Page viii

Summary of the Argument                                Page ix

Argument                                               Pages 1 – 19

POINT I

THE DISTRICT COURT CORRECTLY FOUND
THERE WAS NO INTERSTATE COMMERCE
IN APPELLANTS' WORK OR IN APPELLEES'
BUSINESS, AND THEREFORE APPELLANTS
FAILED TO ESTABLISH INDIVIDUAL OR
ENTERPRISE FLSA COVERAGE                               Page 1

A.    No Individual Coverage Because No Interstate Commerce    Page 1

B.    No Enterprise Coverage Because No Interstate Commerce    Page 4

C.    Red Herrings and Other Non-Meritorious          Page 13
      Arguments by Appellants

Certificate of Compliance                              Page 20

Certificate of Service                                 Page 21

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases Cited</u>

*Catlin v. United States,*
    324 U.S. 229 (1945)                     Page iv

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181
    (11th Cir. 2005)                     Pages 8, 11, 14

*Jacobs v. Dolanlil, Inc.,*
    2010 WL 1730807 (M.D.Fla. April 12, 2010)    Page 3

*Jimenez v. Southern Parking, Inc.,*
    2008 WL 4279618  (S.D. Fla. Sept. 16, 2008)    Pages 3, 5, 12

*Lamonica v. Safe Hurricane Shutters, Inc.,*
    578 F.Supp. 2d 1363, 1366 (S.D.Fla. 2008)    Page 5

*Li v. Li Qin Zhao*,
    35 F.Supp. 3d 300 (E.D.N.Y. 2014)    Page 3

*Mendoza v. Detail Solutions, LLC*,
    911 F.Supp. 2d 433 (N.D. Tex. 2012)    Page 3, 8

*Mitchell v. C.W. Vollmer & Co.*,
    349 U.S. 427 (1955)    Pages 2, 17, 18

*Pitney Bowes, Inc. v. Mestre,*
    701 F.2d 1365 (11th Cir. 1983)    Page iv

*Polycarpe v. E & S Landscaping Service, Inc.*,
    616 F.3d 1217 (11th Cir. 2010)    Pages 4, 6, 7, 12,
    13, 15, 16, 18

*Rivera v. Deer Run Realty Management, Inc.*,
    2015 WL 4878681 at *3 (M.D.Fla  Aug. 14, 2015)    Pages 1-2

i

*Rodilla v. TFC-RB, LLC,*
    2009 WL 3720892 (S.D.Fla. November 4, 2009)    Page 13

*Scott v. K.W. Max Investments, Inc.,* 2007 WL 423080
    (M.D.Fla., Feb. 6, 2007) aff'd 256 Fed.Appx. 244,
    248 (11th Cir. 2007)    Page 2

*Scott v. K.W. Max Investments, Inc.,* 256 Fed.Appx. 244,
    248 (11th Cir. 2007)    Page 5

*Thorne v. All Restoration Services, Inc.,*
    448 F.3d 1264 (11th Cir. 2006)    Pages 3, 12, 13

*Williams v. Signature Pools & Spas, Inc.,*
    615 F.Supp.2d 1374, 1380 (S.D.Fla. 2009)    Page 6

*Zarate v. Jamie Underground, Inc.,*
    629 F.Supp.2d 1328, 1332 (S.D.Fla. 2009)    Page 5, 6

## **Statutes**

28 U.S.C. § 1291    Page iv

28 U.S.C. § 1331    Page iv

29 U.S.C. § 203    Pages 1, 4, 6, 18

ii

## STATEMENT REGARDING ORAL ARUMENT

Appellees do not request oral argument as Appellees believe that the issues should be decided upon the parties' briefs and that oral argument will not benefit the Court.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over Employees' FLSA claims pursuant to 28 U.S.C. § 1331.

District Court Judge Marcia G. Cooke entered Final Judgment in favor of Defendants on December 2, 2016.

This Court has jurisdiction of the District Court's final decision pursuant to 28 U.S.C. § 1291: a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

## <u>STATEMENT OF THE ISSUES</u>

1. Whether the District Court erred when it granted Employer's Amended Motion for Summary Final Judgment because the record evidence showed that Employees failed to carry their burden of establishing that they are covered by the FLSA under the Act's individual or enterprise coverage prongs.

## STATEMENT OF THE CASE

Employer's business is parking cars and parking cars is purely a service. Employees worked for Employer in various positions parking cars. Employer argued in its Amended Motion for Summary Final Judgment that Employer had no involvement in interstate commerce and that Employees could not satisfy their burden of proving individual or enterprise coverage. Employees argued that since they parked cars which were manufactured outside of Florida, they had "handled" goods that had moved in interstate commerce. Employees also argued that they handled "materials" that had moved in interstate commerce.

Because the District Court found that Employees had not carried their burden of establishing that they are covered by the FLSA under the Act's individual coverage prong or enterprise coverage prong, the District Court entered judgment of non-liability as a matter of law with respect to Employees' FLSA claims.

Employees argued that a valet company is a class of business which is covered by the FLSA just for being a valet. Employees' reasoning was the nature of the job is a commerce service involving automobiles – objects which are not only products of interstate commerce, but instrumentalities of interstate commerce.

The District Court rejected Employees' argument that any employee involved with parking cars is necessarily engaged in commerce and held that because Employer had shown that valet parking is a service, the production of goods for commerce option is not applicable in this case. The District Court rejected Employees' argument that they handled materials that had moved in interstate commerce.

## <u>STANDARD OF REVIEW</u>

1.  The District Court's granting of Employers' Amended Motion for Summary

    Final Judgment is reviewed *de novo*.  *See Chapman v. AI Transp.*, 229 F.3d

    1012, 1023 (11th Cir. 2000) (*en banc*).

## SUMMARY OF THE ARGUMENTS

Employees did not meet their burden to show there was an issue of material fact by presenting evidence that Employees were engaged in commerce or the production of goods for commerce ("individual coverage") or that they worked for an "enterprise" engaged in commerce or in the production of goods for commerce ("enterprise coverage").

## POINT I

**THE DISTRICT COURT CORRECTLY FOUND THERE WAS NO INTERSTATE COMMERCE IN APPELLANTS' WORK OR IN APPELLEES' BUSINESS, AND THEREFORE APPELLANTS FAILED TO ESTABLISH INDIVIDUAL OR ENTERPRISE FLSA COVERAGE**

The District Court correctly found that:

> … Plaintiffs were not engaged in interstate commerce. Likewise, First Class did not have other "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A). The record is devoid of any evidence to the contrary.  In short, there is no interstate commerce or FLSA coverage here.

[D.E. #57, p.5].  Simply put, Appellants failed to meet their burden to show that there was individual coverage or enterprise coverage under the FLSA. Accordingly, the District Court's ruling should be affirmed.

### A.    No Individual Coverage Because No Interstate Commerce

It is undisputed that there was no transfer of goods or property from Appellants to the persons who brought their cars to be parked.  Parking a car is purely a service.  It is also undisputed that Appellants were not "engaged in … the production of goods for commerce".[1]  Therefore, the only way that Appellees could qualify for individual coverage was if they were "engaged in commerce".

---

[1] As Appellants were involved solely in the provision of a service (parking cars), and did not produce any goods, let alone goods for commerce, they cannot be said

1

The District Court concisely stated Appellee's argument and correctly found that Appellees were not "engaged in commerce" merely because they were parking vehicles or because those vehicles may have come from outside of Florida:

> **Essentially, Plaintiffs are asking me to rule, as a matter of law, that any employee who parks cars is engaged in interstate commerce. The test, however, is not as loose as Plaintiffs propose.** To carry the burden of showing that they, as valets, were engaged in interstate commerce, they would need to show that their "work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).
>
> To buttress their position, Plaintiffs point out that none of the cars they parked were made in Florida, as most traced back to Japan or Germany. (ECF. No. 43 at 8). But the parking of cars in Florida is an isolated, local activity. **There is no evidence that the parking of cars "was directly and vitally related to the functioning of an instrumentality or facility of interstate commerce."** *Mitchell*, 349 U.S. at 429. The fact that the cars often came to Florida from outside of Florida does not change that conclusion. **Where the vehicles originated is irrelevant if the vehicles had already been purchased by their ultimate users, because "[u]ltimate consumers of products are not 'engaged in commerce' just because they purchase products that have moved**

---

to have "engaged in … the production of goods for commerce". *See Rivera v. Deer Run Realty Management, Inc.*, 2015 WL 4878681 at *3 (M.D.Fla  Aug. 14, 2015), citing *Scott v. K.W. Max Investments, Inc.*, 2007 WL 423080 (M.D.Fla., Feb. 6, 2007) aff'd 256 Fed.Appx. 244, 248 (11th Cir.2007).

**in interstate commerce."** *Jimenez v. Southern Parking, Inc.*, 2008 WL 4279618, at *8 (Sept. 16, 2008 S.D. Fla).

[D.E. #57, pp, 4-5] (emphasis added).  Accordingly, the District Court's ruling should be affirmed.  *See also Li v. Li Qin Zhao*, 35 F.Supp.3d 300, 308-9 (E.D.N.Y. 2014)(no individual coverage under FLSA for delivery driver who used, *inter alia*, an "out of state" car to make deliveries for a local restaurant); *Mendoza v. Detail Solutions, LLC*, 911 F.Supp.2d 433 (N.D. Tex. 2012)(no individual coverage for employee who washed cars manufactured out of state); *Jacobs v. Dolanlil, Inc.*, 2010 WL 1730807 at *4 (M.D.Fla. April 12, 2010)("By washing cars from out-of-state, Plaintiff is not participating in the actual movement of persons or things in interstate commerce.  Accordingly, Plaintiff has not made the requisite threshold showing that he directly participated in the actual movement of persons or things in interstate commerce."); *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264 (11th Cir. 2006).  Notably, Appellants' Brief is silent as to *Thorne* and its obvious application to the case at bar.

Accordingly, the District Court's grant of summary judgment to Appellees should be affirmed because Appellants failed to establish individual coverage under the FLSA.

## B.    No Enterprise Coverage Because No Interstate Commerce

As this Court instructed in that *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010):

> An employer falls under the enterprise coverage section of the FLSA if it 1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and 2) has at least $500,000 of "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A).

*Id*. at 1220.  It is undisputed that Appellee, First Class Parking Systems LLC ("First Class") was not "engaged in … the production of goods for commerce" as it provided only valet parking services and produced no goods whatsoever. Therefore, to determine whether enterprise coverage exists, this Court must determine whether First Class "has employees engaged in commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person…".  *Id*.

As the District Court correctly found, First Class did not engage in interstate commerce or in the production of goods for interstate commerce [D.E. #57, pp. 3, 5] because the business is a valet company which provides only intrastate services to its customers.  Just as Appellants do not qualify for individual coverage because their work "did not sufficiently affect commerce because the plaintiff [parked]

4

vehicles using equipment purchased wholly within Florida and that the plaintiff did not drive the vehicles he [parked] except … within the parking [lot]," *Jimenez v. Southern Parking, Inc.*, 2008 WL 4279618, *8 (S.D. Fla. Sept. 16, 2008), similarly, First Class' other employees were not engaged in commerce[2] and did not have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person…". Accordingly, the District Court's grant of summary judgment to Appellees should be affirmed because Appellants failed to establish enterprise coverage as to First Class.

While Appellants argue that First Class used products in its business that had previously traveled in interstate commerce such as pens, uniforms, valet tickets and walkie-talkies, even if these goods were produced out of state, First Class was the ultimate consumer of the products.  "Ultimate consumers of products are not `engaged in commerce' just because they purchase products that have moved in interstate commerce." *Jimenez*, 2008 WL 4279618 at *8.  *See also Zarate*, 629

---

[2] "In determining what constitutes 'engaged in commerce' for enterprise coverage, courts may look to the definitions used in individual coverage cases." *Zarate v. Jamie Underground, Inc.*, 629 F.Supp. 2d 1328, 1334 (S.D.Fla 2009) (citing *Lamonica v. Safe Hurricane Shutters, Inc.,* 578 F.Supp. 2d 1363, 1366 (S.D.Fla. 2008) (citing *Scott v. K.W. Max Investments, Inc.,* 256 Fed.Appx. 244, 248 (11th Cir. 2007))).  Here, as just as Appellants failed to establish that they were "engaged in commerce" for individual coverage under the FLSA, Appellants also failed to establish that First Class had two or more other employees who engaged in commerce.

F.Supp. 2d at 1332)("Even some out-of-state purchases, such as a local business's occasional or sporadic ordering of office supplies from an out-of-state vendor are not sufficient to confer jurisdiction under the FLSA.") citing *Williams v. Signature Pools & Spas, Inc.,* 615 F.Supp. 2d 1374, 1380 (S.D.Fla. 2009)(quotations and internal punctuation omitted).    Therefore, as a matter of law, no enterprise coverage exists as to First Class, and the District Court's Order should be affirmed.

Appellants incorrectly argue that the pens, walkie-talkies, uniforms and valet tickets were "materials."  Appellant's conclusion is unsupported by the evidence in this case and by *Polycarpe* where this Court stated that an item could be a "good," a "material" or <u>neither</u> based upon the context of its use.  As the *Polycarpe* Court explained:

> Having discussed the relationship between "or materials" and the "goods" definition, actually applying the FLSA requires a further step of determining—in the circumstances of an immediate case—**whether a given item actually counts as "goods" or "materials" (it could also count as neither). Whether an item counts as "materials" will depend on two things: 1) whether, *in the context of its use,* the item fits within the ordinary definition of "materials" under the FLSA and 2) whether the item is being used commercially in the employer's business.**
>
> First, whether an item counts as "materials" depends on whether the item is serving as a material in context. As we just discussed, to count as "materials," an item must fall within that word's ordinary meaning within the FLSA handling-clause context: as tools or other articles

6

necessary for doing or making something. …

> **Second, for an item to count as "materials" it must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item. This requirement is compelled because the statute covers not *all* "goods" and "materials," but only "goods" and "materials" that a company is engaged in "handling, selling, or otherwise working on." 29 U.S.C. § 203(s)(1)(A)(i).**

616 F.3d at 1226-27 (emphasis added)(italics in original)(footnote omitted).

As the *Polycarpe* Court further explained:

> **This focus on the context of an item's use in the pertinent commercial setting ensures that the item is given accurate statutory meaning and legal significance within the framework of a statute designed to cover some—but not all—employers.** So, contrary to some of Plaintiffs' arguments, we believe that the ordinary meaning of "handling, selling, or otherwise working on" is not so expansive as to be limitless; not every employer that meets the $500,000 sales threshold must be subject to the FLSA. **It seems to us that an employee who uses an item at work will only sometimes be "handling, selling, or otherwise working on" the item for the purposes of FLSA coverage: an item's use must have a <u>significant</u> connection to the employer's business purposes.**

> Therefore, we conclude that for the purposes of the FLSA's handling clause, an item will count as "materials" if it accords with the definition of "materials"—tools or other articles **<u>necessary</u> for doing or making something—in the context of its use and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's**

7

**commercial (not just any) purposes.**

*Id.* at 1227 (bold and underline added).

Here, Appellants have failed to meet their burden to show that the pens, uniforms, valet tickets and walkie-talkies were "necessary for doing or making something" and had a "significant connection to the employer's business purposes." *Id*.

Even assuming *arguendo* that the pens and uniforms could be considered "materials," neither the pens nor the uniforms were "necessary for doing or making something" nor did they have a "significant connection to the employer's business purposes," *id*, because using a pen or wearing a uniform are not necessary to park cars. *See Mendoza*, 911 F.Supp.2d at 442 (uniforms "are not necessary for doing or making anything and they do not have a significant connection to the activity of washing cars.").

Similarly, even assuming *arguendo* that the walkie-talkies could be considered "materials," Appellees established that they "do not own any `radios and/or walkie-talkies, the units are leased[.]'" [D.E. #49-2, ¶49]. Furthermore, although Savinovich speculated that the walkie-talkies were made in Japan without any personal knowledge of same [D.E. #44-1, ¶¶43-45], his conclusory speculation is inadmissible, and should be rejected by the Court as such. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Similarly, Asalde did not

8

know where the walkie-talkies were made or purchased. [D.E. #29-4, p.15, lns. 1-3]. Accordingly, there is no record evidence that the walkie-talkies were made or purchased out-of-state, and Appellants have therefore failed to meet their burden to show that interstate commerce was involved.[3]

With regard to the valet tickets, even assuming *arguendo* that the valet tickets could be considered "materials," First Class has already established that *its valet tickets were <u>printed</u> within Florida* [D.E. #49-3, p.23, ln.15 – p.24, ln.2] *and were <u>purchased</u> within Florida* [D.E. #29-6, ¶¶10]. Indeed, the only admissible record evidence of where the valet tickets were printed is from the deposition testimony of Jorge Zuluaga who testified that he purchased the valet tickets locally and that based upon his own personal knowledge and observation, the tickets were printed in Florida. Mr. Zuluaga testified as follows:

> Q. Now, do you remember we had a discussion with Mr. Lopez about the tickets at the locations? There were tickets?
> A. Yes, we have tickets.
> Q. So the tickets, I mean, do you know where if the -- so all three of the locations that these three plaintiffs worked, they all used tickets; is that right?
> A. Yes.
> Q. **And then did -- to your knowledge, did any three of those locations, was there – were there any --**

---

[3] Appellants also failed to establish that the walkie-talkies were "necessary for doing or making something" and had a "significant connection to the employer's business purposes," because using a walkie-talkie is not necessary to park cars. *Polycarpe*, 616 F.3d at 1227.

> **where did those tickets come from? Did you get them from a supplier of some sort or...**
>
> A. **Local -- local suppliers**.
>
> Q. Okay. Do you know who those suppliers were? The names of those suppliers?
>
> A. I don't remember them right now.
>
> Q. You don't know them, okay. **So – but those local suppliers, do you know where – where they got the tickets? I mean, did these suppliers manufacture these tickets here or did they get them from somewhere else? Do you have any idea where they got them?**
>
> A. **I believe my understanding, they're manufactured in Florida.**
>
> Q. Okay. But do you know that? I mean, do you have -- what makes you believe that? Is there, like, something you noted that...
>
> A. **So I've been at the shop and I have seen the huge machines --**
>
> Q. Okay.
>
> A. **-- and all the printing right there.**

[D.E. #49-3, p.23, ln.15 – p.24, ln.2](emphasis added). These facts remain uncontroverted, and therefore the District Court properly granted summary judgment to Appellees. Moreover, Savinovich had already admitted in his Affidavit sworn to on July 18, 2016, that he did not know where the valet tickets were printed: "As to Paragraph 71, **Savinovich is without knowledge as to where Defendants purchased their valet parking tickets that Savinovich used during his work while employed by Defendants** and, therefore, denied." [D.E. #44-1, ¶26](emphasis added). Similarly, Asalde confirmed that she did not know where

First Class purchased its valet tickets.  [D.E. #29-4, p.14, lns. 23-25; D.E. #44-2, ¶39].

Appellants continue to attempt to rely upon a Supplemental Affidavit of Savinovich [D.E. #47-1], which controverts his Affidavit filed nine (9) days earlier [D.E. #44-1], was filed after Appellants' deadline to respond to Appellees' Amended Motion for Summary Final Judgment and months after the discovery deadline had passed.  The Affidavit failed to properly authenticate the ticket and failed to provide any personal knowledge as to where the ticket was printed.  Rather, Savinovich surmised that the ticket was printed in "Shreveport, L.A." because the ticket lists the name "Southland Printing Shreveport, L.A." Savinovich's conjecture is not evidence, it is merely inadmissible and conclusory speculation; it was rejected by the District Court and this Court should reject it as well. *See Cordoba*, 419 F.3d at 1181.

There is no record evidence that this valet ticket was printed outside of Florida.  Instead, the name Southland Printing may simply reflect the name of the patent holder or reflect the name of the parent company of the local Florida printer.  As such, Appellants have certainly <u>not</u> established by admissible record evidence that the valet ticket was printed or purchased outside of Florida.  Accordingly, the

District Court properly rejected this unauthenticated and inadmissible "evidence."[45]

Once again, Appellants erroneously rely upon *Polycarpe* for the proposition that because Appellants parked customers' vehicles, Appellants were handling "materials" that had once moved in interstate commerce, and therefore the FLSA applies. Appellants' argument fails because the customers' vehicles are finished "goods" (subject to the ultimate consumer exception), not materials.[6] *See Jimenez*, 2008 WL 4279618 at *8; *Thorne,* 448 F.3d at 1267 (11th Cir. 2006). The District Court properly analyzed Appellants' argument and concluded:

> Plaintiffs rely on *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010), to argue that because Plaintiffs parked customers' vehicles, Plaintiffs were handling "materials" that had once moved in interstate commerce ("the materials are the cars parked/retrieved for customers"). (ECF No. 4 at 5). The *Polycarpe* court specified, however, "that for the

---

[4] It is noteworthy that during a status conference on July 1, 2016, Appellees made an *ore tenus* motion to reopen discovery on this very issue, and the District Court denied said motion.

[5] Appellants also failed to establish that the valet tickets were "necessary for doing or making something" and had a "significant connection to the employer's business purposes," because using a valet ticket is not necessary to park cars. *Polycarpe*, 616 F.3d at 1227.

[6] If Appellants' reasoning was correct, the vehicles to be parked would initially be "goods" (subject to the ultimate consumer exception), but then be converted into "materials" when the valet parked the vehicle, and converted back into "goods" when the valet retrieved the vehicle for the owner. Appellants' tortured interpretation of "materials" goes too far.

> purposes of the FLSA's handling clause, an item will count as 'materials' [only] if it accords with the definition of 'materials' – tools or other articles necessary for doing or making something." *Polycarpe*, 616 F.3d at 1227. **Thus, "automobiles . . . are not 'materials' for purposes of the FLSA because they are not elements of the goods or goods that are consumed in the employer's business, rather they are the 'goods' themselves."** *Rodilla, v. TFC-RB, LLC*, 2009 WL 3720892, at *13 (S.D. Fla. Nov. 4, 2009). Plaintiffs' reliance upon *Polycarpe* is therefore misplaced

[D.E. #57, p.5](emphasis added).    Accordingly, this Court should affirm the District Court's grant of summary judgment to Appellees.

Significantly, this case is extremely similar to another appeal pending before this Court which was decided in Defendants' favor on summary judgment involving the same subject matter, the same claims, the same defendants, and the same attorneys for Appellants and Appellees: *Rodriguez v. Gold Star, Inc.*, *et al*., bearing Case No.: 16-11508-D.  (A copy of the lower court's Order on Cross-Motions for Summary Judgment in *Rodriguez* has been filed in this case as D.E. #29-1.)

## C.    <u>Red Herrings and Other Non-Meritorious Arguments by Appellants</u>

Appellants argue in their Statement of the Case and Facts that because Appellant Savinovich "processed credit-card payments… [and] handled materials that traveled through interstate commerce when as part of his duties he assisted security in helping with respect to the delivery of packages from international

13

carriers … Appellant Savonavich [*sic*] was engaged in interstate commerce[].” [Appellant's Brief, pp.11-12]. This is a red herring. First, simply handling credit card payments is not sufficient to confer FLSA coverage. *See Thorne*, 448 F.3d at 1267. Second, Savinovich testified that he used a credit card machine only at Seacoast in 2011 and "then never again." [D.E. #29-3, p.37, ln.24 – p.38, ln.9.] Therefore, the credit card issue is immaterial because it is outside of the three (3) year FLSA limitations period. Third, the "evidence" for this statement is an Affidavit of Savinovich [D.E. #44-1, ¶38] where he merely speculates as to the origin of the packages. Notably, Savinovich had no personal knowledge of the origin of the packages and failed to even state the basis of his belief (*e.g.*, that he had conversations with patrons, etc.) that the products or packages were coming from outside of Florida or outside the country. It is just as likely that the packages were coming from inside Florida. As such, the Savinovich Affidavit is nothing more than inadmissible and conclusory speculation and conjecture, and should be rejected by the Court as such. *See Cordoba*, 419 F.3d at 1181.

Appellants mention several times in their Brief that the question of whether the vehicles that Appellants parked were "goods" or "materials" under the FLSA was a question for the jury, and that the District Court should not have decided this issue. However, Appellants provided no citations whatsoever for this proposition. Appellees respectfully submit that whether an item qualifies as "goods" or

14

"materials" under the FLSA is a question for the trial court and not for a jury; all of the cases studied by Appellees' counsel agree with this result.

Appellants also argue that:

> The district court holds that the Appellants rely on *Polycarpe v. E&S Landscaping Serv. Inc.*, 616 F.3d 1217 (11th Cir. 2010) in error. However, the district court bases this conclusion on the local nature of valet services. The Handling Clause is applicable to local service providers, so it was erroneous for the district court to hold that the local nature of the services precluded Appellants from relying on <u>Polycarpe</u>.

[Appellants' Brief, p.13]. However, the District Court did **not** state that Appellants incorrectly relied upon *Polycarpe* because of the intrastate nature of Appellants' work. Instead, the District Court found that Appellants' reliance upon *Polycarpe* was misplaced because the District Court concluded that the vehicles parked by Appellants did not fit within this Court's definition of "materials" as explained in *Polycarpe*. In so doing, the District Court was correct.

Appellants argue that the District Court erred in not including valet parkers within the protections of the FLSA, and that upholding the District Court's Order would "revoke[] federal wage protection from a large percentage of the work force, employees of local service businesses." [Appellants' Brief, p.20]. This argument is not only flawed, it is a gross exaggeration of the questions on appeal. First, the District Court did not generally find that valet parkers are not covered by the

15

FLSA. Instead, the District Court found that Appellants had failed to carry their burden to show that there was individual or enterprise coverage under the FLSA in this case. Affirming the District Court's Order will in no way act to drastically reduce the number of workers protected by the FLSA as Appellants erroneously suggest. Further, this Court itself noted in *Polycarpe* that:

> So, contrary to some of Plaintiffs' arguments, we believe that the ordinary meaning of "handling, selling, or otherwise working on" is not so expansive as to be limitless**; not every employer that meets the $500,000 sales threshold must be subject to the FLSA.**

616 F.3d at 1227 (emphasis added). Indeed, the reach of the FLSA is not limitless as Appellants suggest.

Appellants mischaracterize the District Court's holding on p.21 of their Brief, and then go to great lengths to argue that there is no continuity of movement requirement for items used by a business in order for the business to be engaged in commerce. However, the District Court made no such finding or holding. Moreover, Appellants appear to be arguing the converse of the coming to rest doctrine which was squarely rejected by this Court in *Polycarpe*.

Once again on p.23 of their Brief, Appellants argue that the District Court erred by failing to recognize that the items listed in Footnote Four of the Order [D.E. #57, p.5] "continued their interstate journey as materials." However, Appellants miss the point entirely: the District Court implicitly rejected

16

Appellants' argument that the items in Footnote Four were "materials," and instead accepted that these items were "goods" subject to the ultimate consumer exception.

Appellants then state, "Therefore, the district court erred in its reliance on *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427 (1955), from which it concluded that an employee must perform a service integrally tied to the <u>current</u> movement of interstate commerce." [Appellants' Brief, p.22](underline in original). However, once again, the District Court made no such conclusion or holding. In actuality, in this part of its Order, the District Court was determining whether there was individual coverage based upon the valet parkers having engaged in interstate commerce:

> Essentially, Plaintiffs are asking me to rule, as a matter of law, that any employee who parks cars is engaged in interstate commerce. The test, however, is not as loose as Plaintiffs propose. To carry the burden of showing that they, as valets, were engaged in interstate commerce, they would need to show that their "work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).

[D.E. #57, p.4]. Accordingly, the District Court correctly determined that Appellants failed to carry their burden to show that valet parking cars is "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated

local activity." *Id.* Again on pp.24-26 of their Brief, Appellants argue that the District Court erroneously relied upon *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955), and that the District Court failed to apply the Handling Clause. However, the District Court properly concluded that the vehicles that Appellants parked were "goods" subject to the ultimate consumer exception and not "materials." [D.E. #57, p.5]. Similarly, with regard to the items listed in Footnote Four, the District Court concluded that the items were "goods" purchased by First Class and were also subject to the ultimate consumer exception. *Id.* For these reasons, Appellants' arguments are unavailing.

Appellants then argue on pp.26-28 of their Brief that the District Court incorrectly held that the local nature of Appellees' business was determinative of FLSA enterprise coverage. Appellants argue:

> The district court's holding that a valet parking service is not "an enterprise engaged in interstate commerce," because its services are geographically limited, is at odds with this Court's interpretation of the 1961 & 1974 amendments to the FLSA. *See*, Polycarpe, 616 F.3d at 1220-1221.

[Appellant's Brief, p.27]. However, once again, the District Court made no such finding or conclusion. The District Court first determined that Appellants were not engaged in interstate commerce, and then determined that First Class also was not engaged in interstate commerce. As the District Court held:

18

*Asalde, et al. v. First Class Parking Systems LLC, et al.*

Accordingly, **Plaintiffs were not engaged in interstate commerce**. Likewise, **First Class did not have other "employees handling**, selling, or otherwise working on **goods or materials that have been moved in or produced for commerce by any person."** 29 U.S.C. § 203(s)(1)(A). **The record is devoid of any evidence to the contrary. In short, there is no interstate commerce or FLSA coverage here.**

[D.E. #57, p.5](emphasis added).

## CONCLUSION

The District Court reviewed the record evidence and correctly found that Appellants failed to establish liability under the FLSA under either the individual or enterprise prong.   The District Court therefore properly entered summary judgment in favor of Appellees, and this Court should affirm.

Respectfully Submitted,

Law Office of Lowell J. Kuvin
17 East Flagler St., Suite 223
Miami, Florida 33131
Tel:   305.358.6800
*Attorney for Appellees*

By: /s/ Lowell J. Kuvin, Esq.
        Lowell J. Kuvin, Esq.
        lowell@kuvinlaw.com
        Florida Bar No. 53072

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that 14 point Times New Roman font was used throughout this brief and that the word count is 4,579.

Respectfully Submitted,

Law Office of Lowell J. Kuvin
17 East Flagler St., Suite 223
Miami, Florida 33131
Tel:   305.358.6800
*Attorney for Appellees*

By: <u>/s/ Lowell J. Kuvin, Esq.</u>
       Lowell J. Kuvin, Esq.
       lowell@kuvinlaw.com
       Florida Bar No. 53072

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy hereof is being furnished by electronic service and first class U.S. mail this 1st day of March, 2017 to:

**J.H. Zidell, Esq.**
*J.H. Zidell, P.A.*
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: 305.865.6766
Fax: 305.865.7167
Email: ZAbogado@aol.com
*Attorneys for Plaintiff/Appellant*

**Joshua H. Sheskin, Esq.**
*J.H. Zidell, P.A.*
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: 305.865.6766
Fax: 305.865.7167
Email: Jsheskin@jhzidellpa@gmail.com
*Attorneys for Plaintiff/Appellant*

By: /s/ Lowell J. Kuvin, Esq.
Lowell J. Kuvin, Esq.
Florida Bar No. 53072